IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL WICKLANDER,                                                          CV 04-805 AS

       Plaintiff,                                                          OPINION AND ORDER

       v.

DEFINED BENEFIT PENSION
PLAN OF AGC-INTERNATIONAL
UNION OF OPERATING ENGINEERS
LOCAL 701 PENSION TRUST FUND,

       Defendant.

Megan E. Glor
Swanson, Thomas & Coon
The American Bank Building
621 S.W. Morrison Street, Suite 900
Portland, Oregon 97205-3892

    Attorneys for Plaintiff

Bruce A. Rubin
Alyssa E. Tormala
Miller Nash LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
    Attorneys for Defendant

ASHMANSKAS, Magistrate Judge:

1 - OPINION AND ORDER

Plaintiff Daniel Wicklander seeks to recover disability benefits pursuant to the terms of the Defined Benefit Pension Plan of AGC-International Union of Operating Engineers Local 701 Pension Trust Fund ("the Plan"). At issue are cross-motions for summary judgment.

## STIPULATED FACTS

Plaintiff was a member of the International Union of Operating Engineers Local 701 ("Local 701") and was a participant in the Plan. The Plan requires that a participant be totally and permanently disabled to be eligible for benefits. Section 10.1 of the Plan defines "total and permanent disability" as:

> "disability by bodily injury, disease, or mental disorder which, on the basis of medical evidence, is found by the Trustees to be permanent and continuous during the remainder of the Participant's lifetime and which will render the Participant incapable of any regular employment or occupation substantially gainful in character."

Daniel Wicklander is 58 years old. He has a high school education with no education or training in any field other than construction. Wicklander's brother, Francis Wicklander, was a business agent for Local 701 from September 1980 through September 1986. Francis Wicklander was Chairman for nine years of the review committee which approved all pension applications, including disability pension applications, for the Plan. In 1995, Francis Wicklander ran for re-election as Business Manager of Local 701. He lost the election to Mark Holliday. Francis Wicklander seeks disability benefits from the Plan in a parallel proceeding.

Plaintiff retired in February 2000, and in February 2001 he applied to the Plan for disability retirement benefits.

In January 2001, Daniel L. Marier, M.D., Wicklander's treating physician, opined that he was "totally and permanently disabled and prevented from returning to any type of gainful

employment" due to chronic back degeneration. Wicklander provided the Plan with his Social Security Disability Notice of Award effective February 2000.

The medical records accurately set forth Wicklander's medical history. The court has carefully reviewed the extensive medical records, and the parties are familiar with those records. Accordingly, the details of the medical records will not be recounted here.

The Plan Trustees denied Wicklander's application in March 2001, based on the Trust physician's statement that the physician did not believe Wicklander to be "incapable of totally sedentary work." Holliday Declaration, Ex. 2, p. 104.

In May 2001 Dr. Marier submitted additional information to the Trustees in which he opined that Wicklander was disabled due to back pain.

The Trustees denied Wicklander's application in June 2001 based on the Trust physician's statement that Wicklander was not disabled from sedentary work.

In July 2001 Dr. Marier submitted additional information to the Trustees, and the claim was denied in August 2001. Wicklander appealed, and the Trustees requested an independent medical examination. The examination was performed by William Smith, M.D., on January 28, 2002. Dr. Smith reviewed a synopsis of Wicklander's medical records provided to the Trustees by Dr. Marier, the most recent report of the non-examining Trust physician, and the Plan language defining disability. Dr. Smith stated:

/ / /

/ / /

> Regarding this patient's spine, the compression fracture at L1 has apparently healed without residual. There is evidence of symptom magnification on his examination, suggesting a significant amount of perception of injury and impairment out of proportion to the

3 - OPINION AND ORDER

> actual situation.
>
> . . . .
>
> Clearly this patient is not totally impaired and is able to do at
> least sedentary work. I would see the problem with his heel
> as more of a significant deterrent such that he may not be able
> to do light work but clearly could do sedentary work. Def. ex.
> 2 at 25.

The Trustees denied Wicklander's claim in February 2002[1]. *Id.* at 32.

The Plan provided a claims summary which indicates that five of 115 claims filed between 1992 and 2002 were ultimately denied during that time period. These numbers do not include either of the Wicklander claims. Two denials were upheld after an internal appeal, other than the Wicklander appeals.

Forty one of the 115 claimants either did not receive Social Security benefits or provided no information about Social Security benefits. Seven of the 115 claimants received benefits under the Plan but did not receive Social Security benefits. Two of the claimants received benefits under the Plan though their Social Security benefits were denied. The only claimants for whom independent medical examinations were required were plaintiff and his brother.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying

---

[1] Plaintiff argues that Dr. Smith's opinion is compromised by inappropriate reliance on the Waddell test. This evidence was not presented to the Trustees and is not included in the administrative record, and cannot be considered by this court. *Mongeluzo v. Baxter Travenol Disability Ben. Plan,* 46 F.3d 938, 944 (9th Cir. 1995).

4 - OPINION AND ORDER

those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991)(quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322-23. All reasonable doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630-31 (9th Cir. 1987).

## STANDARD OF REVIEW

The parties dispute the correct standard of review to be applied. Plaintiff contends that the court should review the Plan's decision *de novo* because of taint in the claims process. The parties agree that the Plan reserves to the Trustees the discretion to determine eligibility for benefits, and that absent a showing of taint in the claims process, an abuse of discretion standard applies. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1321 (9th Cir. 1995).

A heightened standard of review is appropriate if a plan gives discretion to an administrator or fiduciary who is operating under an 'apparent' conflict of interest. *Atwood,* 45

F.3d at 1322. The apparent conflict of interest triggers heightened review when the plan administrator has a financial or economic interest in the benefit decisions it makes. In *Atwood,* the plan administrator was also the employer. The *Atwood* court determined that to be entitled to *de novo* review a claimant must show that the conflict caused the benefit decision:

> We ultimately apply a traditional abuse of discretion standard to the decisions of apparently conflicted employer-or insurer-fiduciaries *unless* the affected beneficiary comes forward with further evidence indicating that the conflicting interest caused a breach of the administrator's fiduciary duty to the beneficiary.
> . . .
> The 'less deferential' standard under which we review apparently conflicted fiduciaries has two steps. First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. *Atwood,* 45 F.3d at 1323.

Assuming, without deciding, that plaintiff has established an apparent conflict of interest in the form of personal animus between a Trustee and his brother, he has not provided evidence that that conflict caused the benefit decision. Plaintiff's claim was denied by a committee of at least two Trustees, one of whom may have expressed personal animus against plaintiff's brother. There is no evidence that any animus expressed by one Trustee influenced the other decision-making Trustee. Defendant's Ex. 2, p. 13. Accordingly, if there is no issue of material fact, the Plan's decision denying benefits must stand unless that decision was an abuse of discretion.

/ / /

## DISCUSSION

A plan administrator acts arbitrarily and capriciously when its "decision is 'so patently arbitrary and unreasonable as to lack foundation in factual basis .'" *Taft v. Equitable Life Assur.*

6 - OPINION AND ORDER

*Soc.,* 9 F.3d 1469, 1473 (9th Cir. 1993)(internal quotation marks and citations omitted).A plan administrator's factual determinations may not be overturned unless they are "clearly erroneous." *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 482 (9th Cir. 1990). A plan administrator may not arbitrarily disregard medical evidence provided by a claimant, but the administrator has no obligation to give special weight to the opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003). The *Nord* Court held that ERISA plan administrators cannot be required to accord special weight to the opinions of a claimant's physician "nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Nord,* 538 U.S. at 834.

One treating physician, Dr. Marier, opined in January 2001 that plaintiff was totally and permanently disabled. However, later opinions from Dr. Marier were more equivocal ("unable to perform any significant work as an operating engineer")("unable to undertake just about any job which is physical in nature due to his basic inability to walk") Defendant's Ex. 2 at 97, 92.

Plaintiff was examined by Kim Burchiel M.D., though there is no disability opinion from him. Two nonexamining Plan physicians opined that plaintiff was capable of performing sedentary work. One independent medical examiner, William Smith, M.D., a neurosurgeon, examined Daniel Wicklander and opined that he was capable of sedentary work.

/ / /


Where, as here, the medical evidence conflicts, the Plan's denial of disability benefits must be sustained:

7 - OPINION AND ORDER

> [A]s long as the record demonstrates that there is a reasonable
> basis for concluding that the medical condition was not disabling,
> the decision cannot be characterized as arbitrary, and we must
> defer to the decision of the plan administrator.
>
> The administrator here had conflicting reports from Jordan's
> treating physicians and MetLife's reviewing physicians. This
> is typical of the evidence used in disability determinations.
> Reasonable people can disagree on whether Jordan was "disabled"
> for purposes of the ERISA plan. Because that is so, the admini-
> strator cannot be characterized as acting arbitrarily in taking the
> view that she was not. *Jordan v. Northrop Grumman Co. Welfare
> Benefit Plan,* 370 F.3d 869, 879-80 (9th Cir. 2004).

Three physicians found plaintiff retained the capacity for some work. The statistics as to the Plan's disposition of other claims are not dispositive. As defendant points out, "the summary document shows no set pattern with regard to claim decisions that supports plaintiff's theory of bias and animus on the part of the Trustees." Defendant's Response, p. 4.

There is no issue of material fact. The Plan's determination that plaintiff was not disabled within the meaning of the Plan was not arbitrary.

Plaintiff's motion for summary judgment (# 38) is denied. Defendant's second motion (# 33) for summary judgment is granted.

Dated this 25th day of May, 2005.

    /s/ Donald C. Ashmanskas
    Donald C. Ashmanskas
    United States Magistrate Judge